UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WICKENSON DEMAITRE,

                                    Plaintiff,

              -against-

CITY OF NEW YORK, RICHARD ASKIN,
Individually and as Special Investigator,
JOHN DOES and JANE DOE, 1 through 20,

                                    Defendants.

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____          │
│ DATE FILED: _____         │
└─────────────────────────────────────┘
```

**ORDER**

18 Civ. 12403 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          Plaintiff Wickenson Demaitre has sued the City of New York, Richard Askin – a

New York City Department of Investigation ("DOI") investigator – and twenty John and Jane

Does (collectively, "Defendants") for violation of his constitutional rights under 42 U.S.C.

§§ 1983 and 1985.  The Complaint pleads malicious prosecution, abuse of process, Equal

Protection violations, conspiracy, and municipal liability.  Defendants have moved to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons stated below, Defendants'

motion to dismiss will be granted.

**BACKGROUND**

          In 2000, Plaintiff was hired as a correction officer by the New York City

Department of Correction ("DOC").  (Am. Cmplt. (Dkt. No. 18) ¶ 16)  On October 1, 2014,

while Plaintiff was working at the Anna M. Kross Center at Rikers Island, an inmate housed

there became ill.  (Id. ¶¶ 36-37)  Plaintiff reported the illness.  (Id. ¶ 38)  The inmate received

medical care, but later died.  (Id. ¶¶ 39-40)

          The DOC and DOI investigator Askin investigated the circumstances of the

inmate's death.  (Id. ¶¶ 42-43)  As a result of the investigation, the DOI "issued a report

concluding that Corizon – an entity that had contracted to provide medical services at Rikers Island – provided substandard care to inmates . . . and neglected the care of inmates." (Id. ¶¶ 34, 45)

Plaintiff alleges that Defendants "conspired among themselves and with others to use non-Caucasian correction officers such as Plaintiff," who is African-American, "as scapegoats for their failings and inadequacies" based on Defendants' "racial animus directed against non-Caucasian correction officers." (Id. ¶¶ 4, 46-47)  Defendants accused Plaintiff of filing a "false report" concerning the sick inmate, and suspended and eventually terminated his employment as a result of the inmate's death. (Id. ¶¶ 50-51)  Plaintiff was subsequently indicted for filing a false report and engaging in official misconduct. (Id. ¶¶ 53, 56-59)  On May 16, 2017, the criminal charges against Plaintiff were dismissed. (Id. ¶¶ 62-63)

The Complaint was filed on December 31, 2018 (Cmplt. (Dkt. No. 1)), and the Amended Complaint was filed on May 6, 2019. (Am. Cmplt. (Dkt. No. 18))  The Amended Complaint alleges claims under Sections 1983 and 1985 for (1) malicious prosecution; (2) abuse of process; (3) equal protection violations; (4) conspiracy; and (5) municipal liability.

On December 20, 2019, Defendants moved to dismiss, arguing that none of Plaintiff's claims is sufficiently pled, and that Plaintiff's conspiracy and equal protection claims are time-barred. (Def. Br. (Dkt. No. 37))

## DISCUSSION

## I.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  To meet this standard, a complaint's factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct."  Id. at 679.  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Ne. Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 554-55).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).  "In addition, it is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including arrest reports, criminal complaints, indictments, and criminal disposition data."  Harris v. Howard, No. 08-CV-

4837 (CM), 2009 WL 3682537, at *2 (S.D.N.Y. Oct. 30, 2009) (internal quotation marks and citations omitted).

## II.     MALICIOUS PROSECUTION

### A.     Applicable Law

To plead a Section 1983 malicious prosecution claim, a plaintiff must allege facts "demonstrat[ing]:  (i) the commencement or continuation of a criminal proceeding against h[im]; (ii) the termination of the proceeding in h[is] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice."  Mitchell v. City of New York, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks and citations omitted).  He "must further demonstrate . . . that there was a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights."  Oquendo v. City of New York, No. 14-CV-2582 (ENV) (RLM), 2017 WL 6729850, at *5 (E.D.N.Y. Nov. 15, 2017) (citing Murphy v. Lynn, 118 F.3d 938, 943 (2d Cir. 1997), aff'd, 774 F. App'x 703 (2d Cir. 2019).  "The inability to prove any element is fatal."  Id.

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution . . . ."  Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citation omitted).  Moreover, where a grand jury has issued an indictment, the indictment "creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence[,] or other police conduct undertaken in bad faith.'"  Id. (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)) (emphasis in original).  "[P]laintiff . . . bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment," id. at 73, and a plaintiff must proffer concrete evidence to rebut the presumption.  "[M]ere 'conjecture' and 'surmise' that [an] indictment was procured as a result of conduct undertaken by the defendants in bad faith" is not sufficient.  Id. at 73 (quoting

Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)).  "'After a grand jury indictment, the case

law for malicious prosecution sets a higher standard, which cannot be met by speculation or self-

serving statements.'"  Zahrey v. City of New York, No. CIV.A. 98-4546 DCPJC, 2009 WL

54495, at *9 (S.D.N.Y. Jan. 7, 2009), amended on reconsideration in part, No. CIVA 98-4546

DCP JCF, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009) (quoting Hill v. Melvin, No. 05 Civ.

6645(AJP), 2006 WL 1749520, at *15 (S.D.N.Y. June 27, 2006).

     **B.**    **Analysis**

     Plaintiff claims that Askin and the other Defendants fabricated evidence against

him.  According to Plaintiff, Askin prepared a report after his investigation into the inmate's

death.  In his report, Askin accused Plaintiff of falsifying a report about the inmate's medical

needs.  Defendants "thereafter secur[ed] an indictment against Plaintiff and maliciously

prosecuted Plaintiff, based on the false information contained in . . . Askin's report."  (Am.

Cmplt. ¶¶ 43-44, 52)  Plaintiff also claims that Defendants "obtained and/or coerced . . . false

information and testimony" from another correction officer, which was also used against

Plaintiff.  (Id. ¶¶ 53-57)  As noted above, Plaintiff was charged by New York state authorities

with filing a false report and engaging in official misconduct.  (Id. ¶¶ 57-58)

     In moving to dismiss Plaintiff's Section 1983 malicious prosecution claim,

Defendants argue that the indictment "creates a presumption that probable cause existed for

[Plaintiff's] prosecution."  (Def. Br. (Dkt. No. 37) at 21)[1]  Defendants further contend that

Plaintiff's allegations "that his indictment was based on 'fabricating and/or coercing testimony'"

are nothing more than "speculative and conclusory assertions that his indictment was 'procured

by . . . police conduct undertaken in bad faith.'"  (Id. (first quoting Am. Cmplt. at ¶ 74; then

---

[1]  Citations to page numbers refer to the pagination reflected in this District's Electronic Case
Files ("ECF") system.

quoting <u>Dufort v. City of New York</u>, 874 F.3d 338, 352 (2d Cir. 2017)))  According to Defendants, these allegations are not sufficient to rebut the presumption.  (<u>Id.</u>)

Although Plaintiff argues that the Amended Complaint "contain[s] factual content which permits this Court to properly conclude Defendants bear liability for their conduct" (Pltf. Opp. (Dkt. No. 40) at 17), Plaintiff's factual allegations concerning his malicious prosecution claim are entirely conclusory.  Plaintiff does no more than assert that Askin prepared a false report and that Defendants coerced false testimony from a correction officer.  Given that Plaintiff does not explain what was false in Askin's report or in the correction officer's testimony (<u>see</u> Am. Cmplt. (Dkt. No. 18) ¶¶ 43-44, 51-53, 74), his allegations are "speculati[ve]" and "self-serving."  <u>Zahrey</u>, 2009 WL 54495, at *9.  And because "Plaintiff has not identified any particular lies or other misconduct that led to the indictment," he has not sufficiently alleged facts to discredit the grand jury's finding of probable cause.  <u>Wright v. Rutulante</u>, No. 16-CV-10068 (KMK), 2018 WL 1578172, at *6 (S.D.N.Y. Mar. 27, 2018).  Accordingly, Plaintiff's malicious prosecution claim fails, because he has not rebutted the presumption – arising from the indictment – that there was probable cause for his arrest and prosecution.[2]

Defendants also argue that Plaintiff has not satisfied "the favorable termination element" of a malicious prosecution claim.  (Def. Br. (Dkt. 37) at 17)  The Amended Complaint asserts that "[o]n or about May 16, 2017 the judge . . . dismissed all charges against [Plaintiff]." Am. Cmplt. (Dkt. No. 18) ¶ 62)  According to Plaintiff, his "arrest and prosecution was deemed a

---

[2]  <u>Matthews v. City of New York</u>, 889 F. Supp. 2d 418, 440 (E.D.N.Y. 2012) – cited by Plaintiff (Pltf. Opp. (Dkt. No. 40) at 16-17) – is not to the contrary.  In that case, plaintiff alleged that officers had coerced his confession to gun possession by telling him that his brother, who had been badly beaten earlier that night, would not receive medical attention until someone provided a written confession.  <u>Matthews</u>, 889 F. Supp. 2d at 425, 440.  No such specific facts are pled here.

nullity" when the charges were "terminated in his favor . . . pursuant to [S]ection 160.60 of New York Criminal Procedure [Law]."  (Id. ¶ 63)

In support of their motion, Defendants have submitted a Certificate of Disposition concerning the criminal charges brought against Plaintiff.  (Reilly Decl. (Dkt. No 36) Ex. C) This Court may take judicial notice of the Certificate of Disposition.  Torres v. Vasta, No. 18-CV-8706 (KMK), 2019 WL 4640247, at *6 n.6 (S.D.N.Y. Sept. 24, 2019) (collecting cases). The Certificate of Disposition does not disclose the reason for the dismissal, but merely states that the charges against Plaintiff were "dismissed" and that Plaintiff "was discharged."  (Reilly Decl. (Dkt. No 36) Ex. C)

A plaintiff pursuing a malicious prosecution claim must plead facts "show[ing] that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence."  Lanning v. City of Glens Falls, 908 F.3d 19, 22 (2d Cir. 2018).  Allegations that merely assert that charges were dismissed are not sufficient.  See Johnson v. City of New York, No. 20-CV-3083 (LLS), 2020 WL 2192830, at *5 (S.D.N.Y. May 5, 2020) (dismissing malicious prosecution claim; certificate of disposition indicating that charges were dismissed not sufficient to show innocence); Ndemenoh v. City Univ. of New York, No. 20-CV-4492 (LLS), 2020 WL 4547302, at *2, 5 (S.D.N.Y. Aug. 4, 2020) (dismissing malicious prosecution claim; allegation that charges were "dismissed and sealed with certificates of disposition" was not sufficient to demonstrate that prosecution ended in a fashion that affirmatively demonstrated plaintiff's innocence).

Here, neither the Amended Complaint nor the Certificate of Disposition states the basis for the dismissal.  Accordingly, Plaintiff has "not show[n] that the [underlying] proceeding established his innocence."  Johnson, 2020 WL 2192830, at *5.

Because Plaintiff has not pled facts sufficient to satisfy two elements of his malicious prosecution claim – lack of probable cause and favorable termination – Defendants' motion to dismiss his malicious prosecution claim will be granted.[3]

## III.   EQUAL PROTECTION

Plaintiff claims that Defendants "depriv[ed him] of Equal Protection of the law." (Am. Cmplt. (Dkt. No. 18) ¶ 81)  According to Plaintiff, "Defendants have arrested and prosecuted non-Caucasian correction officers based on fabricated and/or coerced statements and testimony."  (Id. ¶ 22; see also ¶¶ 30-31)  Plaintiff further alleges, "[u]pon information and belief, [that] Defendants have not subjected Caucasian correction officers who allegedly filed false statements to arrest and criminal prosecution."  (Id. ¶ 33)  "Defendants singled [him] out . . . because of their discriminatory animus directed . . . on account of [his] race, and in accordance with their policy and practice of using said non-Caucasian officers to deflect from their mismanagement of Rikers Island."  (Id. ¶ 49)

Defendants contend that Plaintiff fails to state a Section 1983 equal protection claim, and that any such claim is untimely.  (Def. Br. (Dkt. No. 37) at 14, 22)

### A.   Applicable Law

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'"  White v. City of New York, 206 F. Supp. 3d 920, 930 (S.D.N.Y. 2016) (quoting City of Cleburne v. Cleburn Living Ctr., 473 U.S. 432, 439 (1985)).  "'Proof that discriminatory intent was a motivating factor is required to show a violation of the Equal Protection Clause.'"  (Id. (quoting Okin v. Village of

---

[3]  Given this conclusion, the Court does not reach Defendants' remaining arguments concerning Plaintiff's malicious prosecution claim.  (See Def. Br. (Dkt. No. 37) at 16-17, 19-22)

Cornwall-on-Hudson Police Dept., 577 F.3d 415, 438 (2d Cir. 2009) (citing Arlington Heights v.

Metro Hous. Dev. Corp., 429 U.S. 252, 265-66 (1977))).

> To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (internal quotation

marks and citations omitted).  To the extent that Plaintiff's equal protection claim is based on a

theory of selective prosecution, he must also show "that similarly situated individuals of a

different race were not prosecuted."  Pyke v. Cuomo, 258 F.3d 107, 109 (2d Cir. 2001) (citation

omitted).  In this regard, it is not sufficient to "conclusorily assert[ ] that the Defendants

intentionally treated him differently from others in a similar situation."  Lanning, 908 F.3d at 29

(2d Cir. 2018) (internal quotation marks omitted) (affirming dismissal of equal protection claim

where plaintiff had not "allege[d] any examples of other individuals against whom reports of

criminal activity were made, . . . let alone other individuals accused of similar conduct").

### B.   Analysis

The Amended Complaint identifies two "non-Caucasian corrections officers"

whom "Defendant City of New York arrested and instituted criminal proceedings against . . . for

allegedly making false statements regarding an incident at Rikers Island."  (Am. Cmplt. (Dkt.

No. 18) ¶ 31)  Plaintiff has not identified any "similarly situated" comparators, however.  He

merely asserts that "Defendants have not subjected Caucasian correction officers who allegedly

filed false statements to arrest and criminal prosecution."  (Id. ¶ 33)  Such "'[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to

state a claim on which relief can be granted."  Lanning, 908 F.3d at 29-30 (quoting Iqbal, 556

U.S. at 678).

Plaintiff contends that his equal protection claims are broader than selective prosecution, however, citing to allegations "that Defendants engaged in the prohibited conduct because of racial animus and because of the race of [Plaintiff] and the race of other correction officers . . . ."  (Pltf. Opp. (Dkt. No. 40) at 21 (citing (Am. Cmplt. (Dkt. No. 18) ¶¶ 30-31, 46-49) But the "prohibited conduct" is described in the same conclusory terms:  that Defendants "conspired among themselves and with others to falsely arrest and maliciously prosecute non-Caucasian corrections officers working with [DOC], including Plaintiff"; and that Defendants have a "pattern, policy and custom . . . to use non-Caucasian correction officers such as Plaintiff, as scapegoats . . . because of their racial animus directed against non-Caucasian correction officers."  (Am. Cmplt. (Dkt. No. 18) ¶¶ 30, 46-47)  Because Plaintiff's equal protection claim is premised on "'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (citation omitted), it will be dismissed.[4]

## IV.   ABUSE OF PROCESS

"[A] malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) (citations omitted).  "'In order to state a [Section 1983] claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action . . . [and] that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'"  Morales v. City of New York, 752 F.3d 234, 238 (2d Cir. 2014) (per curiam) (quoting Savino, 331 F.3d at 77).  "[I]t is not sufficient for a plaintiff to allege that the defendants were seeking to

---

[4]  Having concluded that the Amended Complaint does not state an equal protection claim, the Court does not reach Defendants' argument that any such claim is time-barred.

retaliate against him by pursuing his arrest and prosecution." Savino, 331 F.3d at 77. "Examples of the types of collateral objectives covered by the tort of malicious abuse of process include the infliction of economic harm, extortion, blackmail, and retribution." Johnson v. City of New York, No. 15 Civ. 8195 GHW, 2017 WL 2312924, at *18 (S.D.N.Y. May 26, 2017) (citation omitted). The mere issuance of process does not give rise to a claim; "abuse of process is the improper use of process after it is regularly issued." Cook, 41 F.3d at 80 (internal quotation marks omitted).

As to collateral objective, Plaintiff claims that Defendants' purpose in bringing charges against him was "to deflect [public attention] from their mismanagement of Rikers Island." (Am. Cmplt. (Dkt. No. 18) ¶ 49) Defendants sought to "secure their reputation [and] to secure positive publicity regarding their management of Rikers Island." (Pltf. Opp. (Dkt. No. 40) at 24) None of the Amended Complaint's allegations address Askin's purported collateral objective, however.

"'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Blount v. Kelly, No. 15-CV-5599(PKC)(JO), 2018 WL 3382906, at *10 (E.D.N.Y. July 10, 2018) (quoting Allen v. Antal, 665 F. App'x. 9, 14 (2d Cir. 2016)). Moreover, "'[a] complaint which alleges [a collateral objective] in wholly conclusory terms may safely be dismissed on the pleadings alone.'" Jovanovic v. City of New York, No. 04 CIV.8437 PAC, 2006 WL 2411541, at *12 (S.D.N.Y. Aug. 17, 2006), on reconsideration in part, No. 04 CV 8437(PAC), 2008 WL 355515 (S.D.N.Y. Feb. 7, 2008) (quoting Duamutef v. Morris, 956 F. Supp. 1112, 1119 (S.D.N.Y.1997)).

Because the Amended Complaint contains only conclusory allegations as to the City's collateral objective, and no specific allegations as to Askin's collateral objective, the abuse of process claim will be dismissed.

## V.  CONSPIRACY

Plaintiff alleges that Defendants conspired "to avoid their responsibility" for the death of an inmate, and to "cause[] an indictment and arrest warrant to issue against Plaintiff and to prosecute criminal proceedings against him."  (Am. Cmplt. (Dkt. No. 18) ¶¶ 20, 65)  Plaintiff further alleges that Defendants, per "custom, policy and practice . . . conspired among themselves and with others to falsely arrest and maliciously prosecute non-Caucasian officers . . . including Plaintiff."  (Id. ¶ 30; see also ¶ 81 ("Each of the Defendants conspired, directly or indirectly, for the purpose of depriving Plaintiff of Equal Protection of the law."))

Defendants contend that the Amended Complaint does not state a claim for conspiracy to violate Plaintiff's right to equal protection and that, in any event, any such claim would be time-barred.  (Def. Br. (Dkt. No. 37) at 14, 25)

### A.  Applicable Law

The four elements of a [Section 1985(3)] claim are:  (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993) (citing United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)).  "'[A] plaintiff [bringing such a claim] "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."'" Sylla v. City of New York, No. 04 Civ. 5692 (ILG), 2005 WL 3336460, at *7 (E.D.N.Y. Dec. 8, 2005) (quoting Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (quoting Romer v.

Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000))).  "[A] 'complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'"  Id. (quoting Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999)) (citing Sommer v. Dixon, 709 F.2d 173, 175 (2d Cir. 1983)).

  **B.**  **Analysis**

    Defendants contend that the Amended Complaint does not "allege an agreement," and does not provide "any non-speculative support for [a conspiracy] claim."  (Def. Br. (Dkt. No. 37) at 28)

    Citing O'Hara v. City of New York, No. 17-CV-4766, 2019 WL 2326040, at *8 (E.D.N.Y. May 31, 2019), Plaintiff argues that his allegations are sufficient.  (Pltf. Opp. (Dkt. No. 40) at 22)  In O'Hara, however, plaintiff "specifically alleged many overt acts" that the named defendants had committed "in furtherance of the conspiracy."  O'Hara, 2019 WL 2326040, at *8.  Plaintiff has alleged no such overt acts here.  Indeed, Plaintiff's allegations are wholly conclusory and insufficient to demonstrate that Defendants entered into any conspiratorial agreement.  See Sylla, 2005 WL 3336460, at *7.  Accordingly, Plaintiff's conspiracy claim will be dismissed.[5]

**VI.**  **MUNICIPAL LIABILITY**

    In support of his Section 1983 claim for municipal liability, Plaintiff alleges that the "City of New York has a custom, policy, pattern and practice of singling out non-Caucasian correction officers for blame, to cover up and/or deflect criticisms of Defendants' shortcomings

---

[5]  Defendants also note that the Amended Complaint only names Askin as a Defendant, and that Askin can neither conspire with himself nor with the City of New York, based on the intra-corporate conspiracy doctrine.  (Def. Br. (Dkt. No. 37) at 26-27).  Given this Court's conclusion that the Amended Complaint fails to state a Section 1985(3) conspiracy claim, it does not reach (1) this argument or (2) Defendants' argument that any such claim is time-barred.

in the operation of Rikers Island, by subjecting them to punitive penalties of employment termination, arrest and criminal prosecution," and that "[p]ursuant to [that] policy and custom, Defendants have arrested and prosecuted non-Caucasian correction officers based on fabricated and/or coerced statements and testimony." (Am. Cmplt. (Dkt. No. 18) ¶¶ 21-22) Plaintiff also alleges that, "[u]pon information and belief, Defendant City of New York and its policymakers, instituted, fostered and condone the foregoing policy and custom and/or failed to train or supervise investigators and other employees of DOC and/or DOI to ensure they adhered to constitutional requirements related to obtaining probable cause for arrests and prosecution." (Id. ¶ 26)

### A.   Applicable Law

"'[T]o hold a city liable under [Section 1983] for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements:  (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quoting Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

> To allege such a policy or custom, the plaintiff may assert: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees."

Betts v. Shearman, 12 Civ. 3195 (JPO), 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (quoting Saenz v. Lucas, No. 07 Civ. 10534 (WCC), 2008 WL 2735867, at *5 (S.D.N.Y. July 9, 2008)), aff'd, 751 F.3d 78 (2d Cir. 2014).

"[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). "While a court may not apply a heightened pleading standard to Monell claims, 'boilerplate' conclusions as to municipal liability will not suffice, even at [an] early stage of the litigation." Betts, 2013 WL 311124, at *15 (internal citations omitted); see Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) ("Following Iqbal and Twombly, Monell claims must satisfy the plausibility standard. . . ."); Santiago v. City of New York, 09 CIV 0856 (BMC), 2009 WL 2734667, at *3 (E.D.N.Y. Aug. 25, 2009) ("It is questionable whether the boilerplate Monell claim often included in many § 1983 cases, including this one, was ever sufficient to state a claim upon which relief could be granted. . . . In light of [Iqbal] and [Twombly], it is now clear that such boilerplate claims do not rise to the level of plausibility." (internal citations omitted)); In re Dayton, 786 F. Supp. 2d 809, 822-23 (S.D.N.Y. 2011) (Monell claim dismissed where allegations were "conclusory" and complaint contained a "boilerplate recitation of the elements of a Monell claim"); Brodeur v. City of New York, No. 99 Civ. 661 (WHP), 2002 WL 424688, at *6 (S.D.N.Y. Mar. 18, 2002) (Monell claim dismissed where complaint asserted the existence of a policy but did not contain "specific factual allegations sufficient to establish that a municipal policy or custom caused [plaintiff's] alleged injury").

**B.     Analysis**

As discussed above, Plaintiff has not stated a claim for a constitutional violation. "In the absence of an underlying constitutional violation, a plaintiff cannot state a claim . . . under Monell." Dilworth v. Goldberg, No. 10-CV-2224 JMF, 2014 WL 3798631, at *11

(S.D.N.Y. Aug. 1, 2014) (citing Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808

(S.D.N.Y. 2011)).

Even if Plaintiff had stated a constitutional violation, he has not stated a claim for

municipal liability.  Plaintiff points to a single incident of allegedly unconstitutional behavior,

and then asserts – in a conclusory fashion – that this conduct was the product of a municipal

policy or custom.  Such boilerplate allegations are not sufficient to state a claim under Monell.

See Santiago, 2009 WL 2734667, at *3; see also Betts, 2013 WL 311124, at *16 ("To state there

is a policy does not make it so.").  Accordingly, Plaintiff's Monell claim will be dismissed.

## VII.   LEAVE TO AMEND

Although Plaintiff has not requested leave to amend, the Court has considered

whether he should be given an opportunity to do so.  Under the Federal Rules of Civil Procedure,

leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).

District courts "ha[ve] broad discretion" to decide "whether to grant leave to amend."  Gurary v.

Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).  "Where the possibility exists that [a] defect can

be cured," leave to amend "should normally be granted. . . ."  Wright v. Ernst & Young LLP, No.

97 Civ. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997) (citing Oliver Sch., Inc.

v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)), aff'd, 152 F.3d 169 (2d Cir. 1998).  And where a

claim is dismissed on the grounds that it is inadequately pled, "[t]here is a strong preference for

allowing [a] plaintiff[ ] to amend. . . ."  In re Bear Stearns Co., Inc. Sec., Derivative, & ERISA

Litig., No. 07 CIV. 10453, 2011 WL 4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani

v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).  Accordingly, Plaintiff will be granted leave to

amend.

## <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss is granted.  Any motion for leave to amend is to be filed by October 22, 2020.  The proposed Second Amended Complaint is to be attached as an exhibit to the motion.  The Clerk of Court is directed to terminate the motion (Dkt. No. 35).

Dated: New York, New York
       October 11, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge